UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

SARAH Y. ELSHABROWY,

Plaintiff,

-against-

ALI AWAD LAW, P.C.; CEO LAWYER, LLC; ALI AWAD, individually; and AHMED AWAD, individually,

Defendants.

---------------------------------------------------------------X

**REPORT & RECOMMENDATION**
26-CV-50 (HG)(SDE)

**SETH D. EICHENHOLTZ**, United States Magistrate Judge:

Plaintiff Sarah Y. Elshabrowy brings this action against Defendants Ali Awad Law, P.C., CEO Lawyer LLC, Ali Awad, and Ahmed Awad (collectively, "Defendants"), alleging gender and religion-based employment discrimination claims pursuant to New York City Human Rights Law, N.Y.C. Admin. Code § 8–101 *et seq.* ("NYCHRL"); the New York State Human Rights Law, N.Y. Exec., Law § 290 *et seq.* ("NYSHRL"); and state law tort claims of defamation and intentional infliction of emotional distress. (*See* Complaint ("Compl."), Dkt. No. 1-5 at ¶ 9.) Presently before the undersigned, on referral from the Honorable Hector Gonzalez, United States District Judge, are (1) Plaintiff's Motion to Remand to New York State Supreme Court, Queens County; (2) Defendants' Motion to Compel Arbitration; and (3) Defendants' Motion for Sanctions related to Plaintiff's Motion to Remand. (*See* Pl.'s Mot. to Remand, Dkt. No. 38; Defs.' Mot. to Compel Arbitration, Dkt. No. 36; Defs.' Reply in Opp. to Pl.'s Mot. to Remand ("Defs.' Opp. to Remand"), Dkt. No. 40.) For the reasons discussed below, the undersigned respectfully recommends that these motions be denied.

## BACKGROUND

### I. Parties

Defendant Ali Awad Law, P.C. ("Ali Awad Law") is a personal injury law firm with approximately one hundred employees. (*See* Ali Awad Deposition Transcript ("Awad Dep."), Dkt. No. 40–5 at 63:15–25.) Defendant CEO Lawyer is a limited liability company that, together with Ali Awad Law, jointly employed Plaintiff.[1] (*See* Compl. at ¶¶ 11–12.) CEO Lawyer is incorporated in Georgia and has a principal place of business there. (*See id.* at ¶ 11; Defs.' Answer to Compl., Dkt. No. 7 at ¶ 11.) Ali Awad Law maintains six offices in Georgia, two in South Carolina, and one in each of New York, Ohio, Tennessee, and Texas. (*See* Decl. of Ali Awad ("Awad Decl."), Dkt. No. 40–1 at ¶ 11.) Defendant Ali Awad ("Mr. Awad") serves as CEO Lawyer's Chief Executive Officer and is its sole owner and shareholder. (*See id.* at ¶ 6.) Defendant Ahmed Awad ("Ahmed"), the Vice President of Finance and Risk at CEO Lawyer and Mr. Awad's cousin, lives and works out of Georgia. (*See* Awad Dep. at 93:22—25, 94:1.)

Plaintiff is a Muslim woman of Arab descent who was employed by Defendants from August 12, 2024 until her termination on October 2, 2025. (*See* Compl. at ¶¶ 10, 35, 102.) During the entirety of her employment, Plaintiff lived in Queens County, New York, and performed most of her work remotely from her home. (*See id*. at ¶ 10.)

On January 2, 2025, less than one month after receiving a "Rising Star Award" from CEO Lawyer, Plaintiff alleges she began experiencing adverse and discriminatory treatment from

---

[1] Defendants admit that Plaintiff worked remotely for CEO Lawyer and that "CEO Lawyer, LLC terminated Plaintiff's employment." (Defs.' Answer at ¶¶ 7, 10.)

Defendants after first wearing a hijab to work.[2] (*See id.* at ¶¶ 40–41.) She alleges that Defendant Ahmed began a campaign of discriminatory behavior against her, including by insulting her to coworkers and expressing discomfort towards her hijab. (*See id.* at ¶¶ 13, 41–46.) In addition, Plaintiff alleges that Ahmed interfered with her ability to work by denying her "Super Admin[istrative] access," delaying signing a necessary implementation partner, and stalling her projects. (*Id.* at ¶¶ 69–70.) When Plaintiff complained to Mr. Awad about Ahmed's behavior, Mr. Awad allegedly dismissed her concerns, called her "emotional," and justified Ahmed's comments as typical male "aggressive" behavior that she needed to accept. (*Id.* at ¶¶ 5, 24.) Later, when she again raised her concerns about Ahmed in a three-way text exchange with Mr. Awad and Ahmed, Mr. Awad again characterized Plaintiff as "emotional" and reaffirmed that his "decision is always going to fall with Ahmed." (*Id.* at ¶¶ 72, 77, 79.) In response to her text to Mr. Awad, Ahmed allegedly cursed at Plaintiff and questioned her intelligence, conduct Ahmed allegedly did not direct toward male employees. (*See id.* at ¶¶ 74–77.) Plaintiff's Complaint also alleges that Defendants excluded her, because of her gender, from CEO Lawyer's organized transportation to Friday congregational prayers (Jummah) at local masjids. (*See id.* at ¶ 48.) Plaintiff alleges that Muslim men were "routinely included," but "Plaintiff, a Muslim woman, was never once invited to participate in these Jummah carpools." (*Id.* at ¶¶ 48, 53.) In addition, Plaintiff alleges that Mr. Awad prohibited her from certain conduct, including from using religious language, that he permitted among Muslim men. (*See id.* at ¶¶ 80–85.)

On June 26, 2025, Plaintiff filed a formal Complaint with Human Resources ("HR"), in

---

[2] A hijab is a covering for the hair and neck that is worn by some Muslim women, often for religious purposes. *Understanding Hijab: Frequently Asked Questions Answered on World Hijab Day,* Muslim American Society, https://muslimamericansociety.org/understanding-hijab-frequently-asked-questions-answered-on-world-hijab-day/ (last visited Sept. 18, 2026).

which she alleged "repeated verbal abuse/harassment" and documented Mr. Awad's failure to intervene. (*Id.* at ¶ 100.) Plaintiff alleges that HR did not respond to or investigate Plaintiff's claims. (*See id.* at ¶ 101.) Plaintiff was terminated several months later. (*See id.* at ¶ 102.)

Plaintiff alleges that Defendants' adverse treatment of her, based on her status as a Muslim woman, was not unique. Plaintiff alleges, and provides sworn declarations stating, that the only other Muslim woman who was employed by Defendants and wore a hijab, Nabila Uddin, resigned due to "repeated disrespect, degradation, humiliation, and gender–based harassment by Ali Awad and his agents, including Ahmed Awad." (*Id.* at ¶¶ 55–56.) Ms. Uddin submitted a declaration explaining that she was similarly subjected to humiliation, including that Mr. Awad questioned whether she was "cut out for her hard work," that Ahmed "yelled and screamed" at her in front of colleagues," and that her male co–workers "repeatedly interrupted and disrespected" her during team meetings. (*See* Signed Decl. of Nabila Uddin ("Uddin Decl."), Dkt. No. 39-4 dated Nov. 22, 2025, at ¶¶ 5, 8–10.)

## II. Procedural History

Plaintiff filed suit in New York State Supreme Court, Queens County on December 2, 2025. (*See* Compl. at ¶ 16.) Defendants removed this action to this Court on January 5, 2026, premised on the diversity between the parties and that the amount in controversy exceeds $75,000. (*Id.* at ¶ 1.)

On January 20, 2026, Defendants filed a letter seeking a pre-motion conference ("pre-motion letter") in anticipation of a motion to compel arbitration pursuant to Plaintiff's employment agreement. (Defs.' Pre-Mot. Letter to Compel Arbitration, Dkt. No. 9.) On the same day, Plaintiff filed a pre-motion letter in an anticipation of a motion to remand this matter to state court, arguing the Court lacks diversity jurisdiction over this matter based on "new evidence" that Ali Award

Law's "nerve center" of operations was New York, not Georgia. (*See* Pl.'s Notice of Appearance and Intent to File Mot. to Remand, Dkt. No. 11.) Judge Gonzalez referred the pre-motion letters to the undersigned on January 30, 2026. (Order dated Jan. 30, 2026.) The undersigned convened the parties for a pre-motion conference on February 12, 2026. (Min. Entry dated Feb. 13, 2026.) Based on the parties' arguments during that conference, the Court directed the parties to conduct limited discovery regarding jurisdiction, including the citizenship of the parties. (*Id.*) Following completion of the limited discovery period, the parties were given leave to file their respective motions. (Modified Min. Entry dated May 1, 2026.)

Defendants filed their Motion to Compel Arbitration on June 5, 2026, and Plaintiff opposed on June 24, 2026. (Defs.' Mot. to Compel Arbitration; Pl.'s Response in Opp. to Mot. to Compel Arbitration ("Pl.'s Opp. to Arbitration"), Dkt. No. 39.) Plaintiff filed her Motion to Remand on June 18, 2026, and Defendants opposed on June 26, 2026. (Pl.'s Mot. to Remand; Defs.' Opp. to Remand.) In Defendants' opposition to Plaintiff's Motion to Remand, Defendants moved for sanctions, arguing that the Motion to Remand was made in bad faith. (Defs.' Opp. to Remand at 10.) Judge Gonzalez referred the motions to the undersigned for a Report and Recommendation on July 2, 2026. (Order dated Jul. 2, 2026.)

**DISCUSSION**

The Court must ensure that it has jurisdiction before it rules on any other substantive motions. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95 (1998). As such, the undersigned first addresses Plaintiff's Motion to Remand, which raises the prospect that the Court lacks jurisdiction, and then proceeds to address Defendants' Motion to Compel Arbitration and Motion for Sanctions.

## I. Plaintiff's Motion to Remand

When this matter was removed by Defendants to this Court, the parties apparently agreed that all Defendants are residents of Georgia and that Plaintiff is a resident of New York, establishing diversity among the parties. (*See* Compl.; Defs.' Answer to Compl.) Plaintiff now argues that "new evidence" shows that Defendant Ali Awad Law is a citizen of New York, not Georgia. (Pl.'s Notice of Appearance and Intent to File Mot. to Remand at 1.) Specifically, she argues that both Plaintiff and Defendant Ali Awad Law are citizens of New York. For the reasons detailed below, the undersigned finds that Defendant Ali Awad Law has established that it is a resident of Georgia, not New York. Because there is complete diversity between Plaintiff and the Defendants, the undersigned recommends that Plaintiff's Motion to Remand be denied.

### A. Legal Standard

Federal courts have jurisdiction over civil actions where there is complete diversity among the parties and where the value of the controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1).[3] Complete diversity exists where all plaintiffs are citizens of different states from all defendants. *Id; see also Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). The party asserting federal jurisdiction must prove by a preponderance of the evidence that diversity jurisdiction exists. *See Morrison v. Nat'l Austin. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). Jurisdiction is a threshold inquiry. *Id.*

An individual's citizenship, for purposes of diversity jurisdiction, is their domicile—*i.e.*, "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Liandros v. Fortuna*, 157 F. 3d 945

[3] The Court previously found that the amount in controversy exceeds $75,000. (*See* Dkt. Order dated January 22, 2026.)

at 948 (2d Cir. 1998) (citing 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3612, at 526 (2d ed.1984)). By contrast, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A "principal place of business," also sometimes referred to as a corporation's "nerve center," is where the corporation's "high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend,* 559 U.S. 77, 80 (2010). The "nerve center" is generally where the corporation maintains its headquarters. *See id.* at 93.

Where a corporation is "involved in multistate activities," with offices spread across various locations, courts consider the "totality of corporate activity at a given place," or which location represents the "'center of gravity' of corporate function." *Center for Radio Information, Inc. v. Herbst*, 876 F. Supp. 523, 525 (S.D.N.Y. 1995). A corporation's "center of gravity," or "nerve center" is "where the corporation's high level offices direct, control, and coordinate the corporation's activities." *Hertz Corp.*, 559 U.S. at 80.

**B. The Existence of Diversity Among the Parties**

Defendants have sufficiently demonstrated that Georgia serves as Ali Awad Law's nerve center. As an initial matter, the operative Complaint alleges that Ali Awad Law is a citizen of Georgia. (*See* Compl. at ¶ 11) ("Defendant Ali Awad Law, P.C. is a Georgia Professional Corporation with its principal place of business at 200 Peachtree Street NW, Suite 201, Atlanta, Georgia 30303.") Plaintiff has never sought to amend the Complaint to allege otherwise. Mr. Awad, the CEO, owner, and shareholder, "lives and works in Georgia." (Defs.' Opp. to Remand at 9.) Additionally, almost all the Firm's high–level officers live and work in Georgia. (Awad Dep. at 64: 3–19, 93: 22–94: 23.) By contrast, Mr. Awad has, in his own words, only "been four

or five times to New York in my life and one of them was a junior trip in high school." (*Id.* at 94.) Defendants submit testimony that the Firm maintains a New York office, but that it is unsubstantial, hosting only two to three of the Firm's approximately 100 employees, and receiving only rare visits from Mr. Awad "given its small size." (Awad Dep. at 94: 24–95:3.) Further, the New York office of Ali Awad Law was established after this lawsuit was filed and did not exist at the time of the matters at issue in the Complaint. (Pl.'s Mot. to Remand at 5.) Plaintiff acknowledges that Ali Awad Law has a longstanding history in its Atlanta office and admits that mail was delivered there, supporting a finding of citizenship in Georgia. (*Id*. at 4.) Further, Plaintiff submits a declaration from Nabila Uddin, who also worked for Ali Awad Law, wherein Ms. Uddin states that operational decisions were made by Ahmed, whom the parties agree resides in and works in the Firm's Georgia-based offices. (*See id*. at 13; Uddin Decl. at ¶ 6.) ("Everyone in the firm had to go through Ahmed.")

On the other hand, Plaintiff fails to provide sufficient evidence to support her contention that Ali Awad Law is a citizen of New York. Plaintiff argues that Defendant's nerve center cannot be in Georgia because it is unclear whether the Firm's official headquarters is in Marietta, Georgia, as opposed to Atlanta, Georgia. (Pl.'s Mot. to Remand at 3.) However, while Plaintiff is correct that there can only be one specific headquarters location, both plausible headquarters are located within Georgia, supporting a finding that Ali Awad Law's operations are controlled in Georgia, not New York.

Even if the Court were to accept Plaintiff's implication that a disputed headquarters location somehow disqualifies any location in the entire state of Georgia as the nerve center, it remains Plaintiff's burden to affirmatively establish New York as the company's principal place of business. *See Eigo v. SS&C Technologies, Inc*., 24–CV–7028, 2025 WL 2078716, at *5 (E.D.N.Y.

July 24, 2025) ("Plaintiff has introduced nothing to counter defendant's evidence that the direction, control, and coordination of SS&C's worldwide operations takes place at its Connecticut headquarters."). Plaintiff fails to do so. The parties agree that Ali Awad Law maintains five offices that are neither in New York or Georgia, including two in South Carolina, one in Ohio, one in Tennessee, and one in Texas. (*See* Awad Decl. at ¶ 11.) Plaintiff wholly fails to explain how Defendant's New York office, which did not even exist during the events at issue in her Complaint, directs more operations than any of these other offices. Plaintiff similarly fails to allege any facts which would establish the New York office's operational control, relying solely on the fact that it is currently a "substantial component of the firm's actual legal output." (*Id.* at 23.) However, Plaintiff agrees that the *largest* component of the Firm's actual legal output is based in Georgia. (*See id.*) She also states at several points in her motion that Mr. Awad and Amed, citizens of Georgia, direct all business of the firm, including setting the cap for New York personal injury cases, from Georgia.[4] (*See id.* at 6.) In light of this, Plaintiff's conclusory assertion that the amount of work that Ali Awad Law conducts in New York is "substantial" is not enough to support a finding that New York is the corporate nerve center.

Thus, the undersigned finds that Defendants established that Defendant Ali Awad Law's nerve center is in Georgia. As a result, complete diversity exists between the parties—Plaintiff is

---

[4] Plaintiff posits that Ali Awad Law must have been a citizen of New York because it would otherwise be violating New York regulations and ethical rules by making substantive "legal decisions" related to New York litigation from Georgia without consulting an attorney licensed in New York. (Pl.'s Mot. to Compel at 20.) However, these arguments confuse ethics issues with that of operational control. Even if it was true that Mr. Awad and Ahmed should have worked with an attorney admitted in New York on the limited portion of Ali Awad Law's cases based in New York, the relevant inquiry on the issue of citizenship is whether the whole entity of Ali Awad Law was controlled mostly from Georgia. It is clear, even from the evidence Plaintiff cites, that it was.

a citizen of New York and Defendants are all citizens of Georgia—and the undersigned respectfully recommends that Plaintiff's Motion to Remand be denied.

## II. Motion to Compel Arbitration

Having found that the Court has jurisdiction over this matter, the undersigned next addresses Defendants' Motion to Compel Arbitration. Defendants argue that Plaintiff's employment agreement requires that the parties arbitrate this dispute. (*See* Defs.' Mot. to Compel Arbitration at 4–5.) Plaintiff disputes the enforceability of that provision.[5] (Pl.'s Opp. to Arbitration at 20.) Plaintiff further argues that, even assuming the arbitration clause was enforceable, this matter is exempt from arbitration pursuant to the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA") because she makes a claim of sexual harassment within the meaning of the NYCHRL and the NYSHRL. 9 U.S.C. §§ 401 – 402. (*See* Pl.'s Opp. to Arbitration at 3.) Defendants reply that the EFAA does not apply, because, even if Plaintiff's allegations are true, they do not plausibly allege sexual harassment under either law. (Defs.' Mot. to Compel Arbitration at 5.)

As discussed below, the undersigned finds that Plaintiff alleges conduct which may constitute sexual harassment under state and local law. Therefore, the EFAA's prohibition on compelled arbitration applies to this case and the undersigned recommends that Defendants' Motion to Compel Arbitration be denied on that basis.

---

[5] Given the undersigned's conclusion that the EFAA prohibits compelled arbitration of Plaintiff's claims even if the clause was enforceable, the undersigned does not address Plaintiff's arguments regarding the enforceability of the arbitration clause, beyond those related to the EFAA. (Pl.'s Opp. to Arbitration at 20—22.) Rather, in recommending that the motion be denied, the undersigned assumes, without deciding, that Defendants would be entitled to compel arbitration absent the prohibition contained in the EFAA. *See*, *e.g.*, *Kurmangaliev v. Verizon Wireless Services, LLC*, 832 F.Supp.3d 190, 201-202 (E.D.N.Y. 2026) (discussing the "liberal policy favoring arbitration agreements"); (Defs.' Opp. to Remand at 4.)

### A. The Ending Forced Arbitration of Sexual Harassment and Sexual Assault Act

The EFAA prohibits the enforcement of an arbitration agreement in any case relating to a "sexual assault dispute or [a] sexual harassment dispute," regardless of whether the relevant employment agreement calls for arbitration.[6] 9 U.S.C. § 402(a) – (b). The EFAA defines a "sexual harassment dispute" as any "dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law[,]"—in this case, the NYCHRL and the NYSHRL. *Id.* at § 401(4). Because the EFAA's prohibition applies to "a case" where there exists a sexual harassment dispute, courts have concluded that if one or more claims fall under the protection of the EFAA, the prohibition on compelled arbitration extends to the entire case, including those claims which do not involve sexual harassment. *See, e.g.*, *Owens v. PriceWaterHouse Coopers LLC*, 786 F. Supp.3d 831, 852 (S.D.N.Y. 2025) (quoting 9 U.S.C. § 402(a)).

Courts have consistently applied a "plausibility standard" when considering whether a plaintiff has sufficiently alleged conduct constituting sexual harassment within the meaning of the EFAA. *See, e.g., Owens*, 786 F. Supp.3d at 842*; Brazzano v. Thompson Hine LLP*, 24–CV–1420, 2025 WL 963114, at *6 (S.D.N.Y. Mar. 31, 2025) (collecting cases). The "plausibility standard" is the same as that required of a plaintiff to survive a motion to dismiss for failure to state a claim and requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v.*

[6] The Second Circuit has interpreted the EFAA's "relates to" language broadly, holding that retaliation resulting from sexual harassment "is reasonably related to the underlying" sexual harassment as to fall within the EFAA's exemption of "sexual harassment disputes" from arbitration. *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 92 (2d Cir. 2024) (plaintiff's claim of retaliation following a report of sexual harassment is a "sexual harassment dispute" is exempt from arbitration under the EFAA). This holding is of less consequence here, where Plaintiff alleges both sexual harassment and retaliation following her report of sexual harassment. (Compl. at ¶ 20.) In any event, the dispositive question is whether the conduct alleged and/or reported constitutes sexual harassment.

*Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a "probability requirement."). Therefore, to be exempted from arbitration under the EFAA, Plaintiff need only set forth allegations that establish "more than a sheer possibility" that she experienced sexual harassment, as defined under the NYSHRL or the NYCHRL. *Id.*

**B. Sexual Harassment Under the NYSHRL and NYCHRL**

Both the NYSHRL and the NYCHRL prohibit gender discrimination in "compensation or in terms, conditions, or privileges of employment," yet neither statute expressly defines what behavior constitutes "sexual harassment," nor do they specify when, or under what circumstances, gender-based discrimination rises to the level of sexual harassment. N.Y.C. Admin. Code §§ 8–107; N.Y. Exec. Law § 290(1). The NYCHRL comes closest to addressing the relationship between the two concepts, providing that "sexual harassment is a form of unlawful discrimination under local law" and explicitly recognizing that its prohibition against gender discrimination encompasses sexual harassment. *See* N.Y.C. Admin. Code §§ 8–107(29)(b) (defining the rights and responsibilities employers must display in the workplace); 8–107(30)(b)(1) (requiring employers to conduct anti–sexual harassment training and defining the term); 8–132(a)(1)(a) (requiring the commission to post online an explanation of sexual harassment).

Consistent with this framework, courts have emphasized that the NYCHRL and NYSHRL must be construed "liberally for the accomplishment of the remedial purposes thereof." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (quoting N.Y. Exec. Law. § 300). This is especially true for the NYCHRL, which imposes the "most lenient applicable liability standard," including when compared with federal law. 750 F. Supp. 3d at 255 (citing *Yost v. Everyrealm, Inc*., 657 F. Supp. 3d 563, 578 (S.D.N.Y. 2023) ("[T]he NYCHRL's standards of liability are lower than those of Title VII, and lower than, or equal to, those of the NYSHRL.")).

In the absence of a clear definition of "sexual harassment," courts often "resort to the legislative history and other canons of statutory construction." *Murad v. Lafarge S.A.*, 818 F.3d 454, 462 (E.D.N.Y. 2026) (citing *Grajales v. Comm'r of Int. Rev.*, 47 F.4th 58, 62 (2d Cir. 2022).) Consistent with the language of the NYCHRL, courts have recognized sexual harassment as "one species of sex or gender-based discrimination," and that "[t]he NYCHRL, based on its clear textual meaning, protects employees against both 'discrimination' *and* 'sexual harassment.'" *Singh v. Meetup LLC*, 750 F. Supp. 3d 250, 256 (S.D.N.Y. 2024) (emphasis in original).

The undersigned must therefore determine whether, and to what extent, Plaintiff's allegations plausibly constitute "sexual harassment" within the NYCHRL's broader prohibition against gender discrimination, as opposed to the gender-based discrimination that does not constitute sexual harassment. *Owens*, 786 F. Supp. 3d at 845 (concluding that, "to fall within the scope of the EFAA, [the plaintiff's] NYCHRL discrimination claims must include allegations of conduct that constitutes sexual harassment as defined by the NYCHRL."); *See also Singh*, 750 F. Supp. 3d at 256 (observing that, upon the passage of the EFAA, "the difference between "sexual harassment" and the broader category of "gender discrimination" under the NYCHRL now comes to a head."); *Faith v. Khosrowshahi*, 21–CV–691, 2023 WL 5278126, at *7 n.5 (E.D.N.Y. Aug. 16, 2023) (recognizing that alleging employment discrimination does not automatically constitute the "sexual harassment…that would trigger the EFAA's provisions.").

Courts that have considered this issue have reached somewhat disparate conclusions as to the scope of claims that fall within the NYCHRL's definition of sexual harassment. In *Singh v. Meetup LLC*, the court interpreted the NYCHRL and NYSHRL to require "conduct or language

of…romantic, sexual, or lewd nature" when alleging sexual harassment.[7] 750 F. Supp. 3d at 257. Subsequently, in *Owens v. PriceWaterHouse*, the court determined a broader definition of sexual harassment is appropriate, under which sexual harassment encompasses "unwelcome verbal or physical behavior based on a person's gender, regardless of whether that behavior is lewd or sexual in nature." 786 F. Supp. 3d at 846. The court in *Owens* concluded that the plaintiff had plausibly alleged sexual harassment based on assertions that the defendant "denigrated her in front of subordinates and verbally threatened and berated her." *Id.* at 848–49. The court reasoned that this constituted "unwelcome verbal behavior on the basis of her gender," even in the absence of sexual or lewd acts. *Id*. at 849.

In considering the meaning of "sexual harassment" under local law, both *Singh* and *Owens* relied on the same agency guidance issued by the New York City Commission on Human Rights (the "Commission"), to which the NYCHRL directs the publication of online resources about sexual harassment. N.Y.C. Admin. Code § 8–132(a)(1)(a)–(b). Specifically, the NYCHRL requires the Commission to post "an explanation that sexual harassment is a form of unlawful discrimination under local law" and "specific descriptions and examples of activities which may be sexual harassment." *Id*. Both courts looked to the Commission's *Stop Sexual Harassment Act* webpage, which defines "sexual harassment" as "unwelcome verbal or physical behavior based on a person's gender [which] can include unwanted touching: offensive and suggestive gestures or comments; asking about a person's sex life or making sexualized remarks about a person's

[7] Subsequent to *Singh*, another case in the Southern District of New York also held that a plaintiff seeking exemption under the EFAA for a "sexual harassment dispute" must allege "facts describing sexually-charged behavior[,]" reasoning that the Black's Law Dictionary definition of sexual harassment is harassment of a sexual nature. *Smith v. Meta Platforms, Inc.,* 24-CV-4633, 2025 WL 2782484 at *8-9 (S.D.N.Y. Sept. 30, 2025); *See Sexual Harassment*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining sexual harassment as "[v]erbal or physical maltreatment, pestering, or abuse of a sexual nature").

appearance; sexualizing the work environment with imagery or other items; or telling sexual jokes." *See Stop Sexual Harassment Act*, NYC Commission on Human Rights, https://www.nyc.gov/site/cchr/law/sexual-harassment-training-main.page (*last visited* Sept. 3, 2026).

The undersigned observes that the Commission's definition of "sexual harassment" contains its own limiting principles, requiring that the conduct be "unwelcome," "verbal or physical behavior," and "based on a person's gender." *Id.* Notably, the Commission does not further require that harassment be of a sexual nature. In *Owens*, the court noted that the Commission's examples also do not require conduct to be sexual or lewd in nature. *See* 786 F. Supp. 3d at 846. This is because the Commission expressly identifies "unwanted touching" as an example of sexual harassment without qualifying "whether the touching must be sexual in nature." *Id*. Accordingly, the Commission's definition identifies sexual harassment as a particular form of gender–based discrimination, consistent with the NYCRL's express acknowledgment that sexual harassment "is a form of unlawful discrimination under local law." N.Y.C. Admin. Code § 8–132(a)(1)(a)–(b.) This suggests that non-sexual conduct based on gender may, even if it does not always, constitute sexual harassment under the NYCHRL.

In addition, and perhaps most compellingly, defining sexual harassment to encompass conduct that goes beyond "sexual flirtation, sexual jokes, or other sexual actions" is in accord with the Second Circuit's approach to sexual harassment claims. *Owens*, 786 F. Supp. 3d at 847. The Second Circuit has long recognized that "sexual harassment in the work place can proceed under two theories: quid pro quo harassment and a hostile work environment." *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir.1998). Quid pro quo harassment generally occurs "when submission to or rejection of improper or unwelcome sexual conduct by an individual is used as

the basis for employment decisions affecting such individual." *Alexander v. Westbury Union Free School Dist.*, 829 F. Supp. 2d 89, 108 (E.D.N.Y. 2011). A hostile work environment claim, by contrast, needs "neither 'sex–specific and derogatory terms' nor any evidence that 'sexual desire' motivated the harassment." *Gregory v. Daly*, 243 F.3d 687, 695 (2d Cir. 2001), *as amended* (Apr. 20, 2001). Under this reasoning, a plaintiff may establish sexual harassment by demonstrating that the workplace is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[8] *Buscaino v. Dircksen & Talleyrand, Inc.*, 22–CV–7572, 2025 WL 777085, at *8 (E.D.N.Y. Mar. 11, 2025).

The Second Circuit's recognition that sexual harassment need not be of an explicitly sexual nature—even under Title VII's more demanding federal framework—supports the conclusion in *Owens* that sexual harassment under the broader NYCHRL and NYSHRL standards can include any unwelcome verbal or physical behavior that is gender-based, even when it does not explicitly involve conduct or language of a sexual nature. *See Yost,* 657 F. Supp. 3d at 578 (S.D.N.Y. 2023) ("[T]he NYCHRL's standards of liability are lower than those of Title VII, and lower than, or equal to, those of the NYSHRL.").

### C. Plaintiff Plausibly Alleges Conduct Constituting Sexual Harassment Under the NYCHRL and NYSHRL

The next question is whether, in this case, Plaintiff's allegations sufficiently allege a gender-based hostile work environment that would constitute sexual harassment under the

---

[8] In 2019, the New York General Assembly amended the NYSHRL to remove its severe or pervasiveness requirement. *See* Grace O''Donnell & Richard Rabin*, Amendments to State Human Rights Law Will Impact New York Companies*, JD Supra (Aug. 15, 2019), https://www.jdsupra.com/legalnews/amendments-to-state-human-rights-law-23350. *Buscaino*'s iteration of the hostile work environment standard under Title VII, while illustrating that a hostile work environment need not be sexual or lewd, is more restrictive than the standard required under state and local law.

NYCHRL and NYSHRL. Under the NYCHRL, a plaintiff need only plausibly allege that she was subjected to "unwelcome gender-based conduct." *Mitura v. Finco Services*, 12 F. Supp. 3d 442 (S.D.N.Y. 2024) (quoting *Mayorga v. Greenberg*, 22–CV–387, 2023 WL 6307994, at *8 (E.D.N.Y. Sept. 28, 2023)). Under the NYSHRL, a plaintiff must plausibly allege that she was subjected to inferior "terms, conditions, or privileges of employment because of" her gender. 12 F. Supp. 3d at 453. For the gender-based harassment to constitute sexual harassment, it must involve "unwelcome verbal or physical behavior based on a person's gender." *Stop Sexual Harassment Act*, NYC Human Rights, https://www.nyc.gov/site/cchr/law/sexual-harassment-training-main.page (last visited Sept. 3, 2026).

The undersigned finds that the allegations set forth in Plaintiff's Complaint, if true, plausibly establish a set of facts that would meet this standard. In her Complaint, Plaintiff alleges that, after she began wearing a hijab in January 2025, Ahmed started treating her differently, including by avoiding eye contact, appearing visibly uncomfortable in her presence, and becoming agitated during interactions with her. (*See* Compl. at ¶¶ 41–42.) She further alleges that Ahmed thereafter subjected her to a pattern of hostile and demeaning conduct, including shouting at her, abruptly ending a Zoom call, dismissing her requests, and calling Plaintiff and her team "incompetent" in front of a subordinate. (*Id.* at ¶¶ 45–46.) Plaintiff alleges that she reported this conduct to Mr. Awad, who compared any intervention towards Ahmed to "trying to control an animal," a sentiment he then applied towards another male executive. (Compl. at ¶¶ 27—30.) Mr. Amed allegedly acknowledged that Ahmed needed "softening," but instead characterized Plaintiff as "emotional." (*Id.*) *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 250–51 (1989) (recognizing sex stereotyping as a form of gender discrimination).

Plaintiff identifies additional occurrences of sexual harassment in June 2025, when Ahmed allegedly cursed at Plaintiff for reporting his conduct to Mr. Awad, told her she was "embarrassing" herself, and stated, "You're not the most intelligent person in the room." (Pl.'s Opp. to Arbitration at 6.) Plaintiff alleges that Ahmed did not direct these insults toward her male comparators. (*See id.*) To the contrary, Plaintiff alleges that Ms. Uddin, the only other Muslim women who worked for CEO Lawyer and wore a hijab, resigned after experiencing similar conduct by Defendants. (*See id.* at 7.) *See Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008) (Although such "me too" evidence is necessarily fact dependent, evidence concerning similar acts may support an inference of discriminatory animus where the circumstances are sufficiently related to Plaintiff's claims). *See also*, *Miro v. City of Bridgeport*, 20–CV–346, 2023 WL 4992877, at *7 (D. Conn. Aug. 3, 2023) ("Similar acts of discrimination may likewise support a discriminatory hostile work environment."). Finally, Plaintiff alleges that Defendants terminated her employment after she began wearing a hijab and after she formally reported Ahmed's conduct to Human Resources. (*See* Pl.'s Opp. to Arbitration at 7.)

Not every allegation of gender–based mistreatment constitutes evidence of sexual harassment, and even accepting the more expansive definition of sexual harassment found in *Owens*, some forms of gender discrimination do not necessarily amount to sexual harassment. For example, Plaintiff's allegations that she was excluded from Jallah or that Ahmed interfered with her ability to work, while unwelcome and allegedly gender-based, are neither physical nor verbal and therefore would not, standing alone, constitute "sexual harassment" under state and local law. However, Plaintiff's allegations, viewed collectively, including allegations which involve verbal gender-based harassment, suggest that the treatment she experienced was not merely interpersonal conflict or isolated instances, but instead "unwelcome gender-based conduct" that subjected her to

inferior "terms, conditions, or privileges of employment." *See Mitura*, 12 F. Supp. 3d at 453 (finding a plausible NYSHRL sexual harassment claim based on allegations that the defendants called the plaintiff demeaning names, humiliated her in front of coworkers, and made jokes at her expense). As such, the allegations plausibly allege sexual harassment under the NYCHRL and NYSHRL, this case involves a sexual harassment dispute within the meaning of the EFAA, and the EFAA prohibits Defendants from compelling arbitration. Accordingly, the undersigned recommends that Defendants' Motion to Compel Arbitration be denied.

**III. Motion for Reasonable Attorneys' Fees and Costs Related to the Motion to Remand**

Defendants move for sanctions relating to Plaintiff's Motion to Remand, seeking an award of reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1927. (*See* Defs.' Opp. to Remand at 10.) Their motion is premised on the fact that the Motion to Remand contradicts the allegations in Plaintiff's operative Complaint regarding Ali Awad Law's citizenship. (*See id.*) Defendants argue that one or the other of Plaintiff's filings was made in bad faith. (*See id.*) Although Plaintiff's decision to file a motion premised on a fact that contradicts her own pleading is problematic, the record does not support a finding that Plaintiff's counsel acted with the requisite bad faith in filing the motion, as is required for sanctions under 28 U.S.C. § 1927. As such, the undersigned recommends that the Motion be denied.

Sanctions may be issued under 28 U.S.C. § 1927 when an attorney "so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Rothman v. Complete Packing & Shipping Supplies, Inc.*, 22–CV–2821, 2024 WL 4350433, at *2 (E.D.N.Y. Sept. 30, 2024) (quoting 28 U.S.C. § 1927). Awarding sanctions under the statute requires a finding of "subjective bad faith by counsel." *U.S. v. Intern. Bhd. of Teamsters,* 948 F. 2d 1338, 1345 (2d Cir.

1991). "Unlike [Federal Rule of Civil Procedure] 11 sanctions which focus on particular papers, the inquiry under § 1927 is on a course of conduct." *Hernandez v. Money Source Inc*., 17–CV–6919, 2022 WL 2702894, at *8 (E.D.N.Y. July 12, 2022) (quoting *Bowler v. U.S. I.N.S*., 901 F. Supp. 597, 605 (S.D.N.Y. 1995).

Here, Defendants argue that "Plaintiff has not sought to amend her Complaint in the more than six (6) months since it was filed" and that Plaintiff fails to "explain or otherwise conceptualize how she can represent to the Court in one filing that Ali Awad Law's principal place of business is in Georgia, but in another filing represent that it is in New York." (Defs.' Opp. to Remand at 10.) Defendants also argue that declarations and facts submitted by Plaintiff refute her motion. (*See id.*)

The conduct of Plaintiff's counsel, accurately described in Defendants' motion, calls into question whether there exists a good faith basis for Plaintiff's Motion to Remand. Courts have found bad faith "when an attorney knows that his or her actions are taken without factual or legal basis" or when "an attorney's 'actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose.'" *City of New York v. Fleet General Insurance Group, Inc.*, 19-CV-6629, 2024 WL 4362490, at *4 (E.D.N.Y. Sept. 24, 2024) (quoting *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2021) (other internal citations omitted)). Here, however, the undersigned credits for the purpose of this motion Plaintiff's counsel's belief that "new evidence" developed since the filing of the Complaint that supported Plaintiff's Motion to Remand. It is also notable that the alleged bad faith consists of the filing of one motion, not vexatious repeated meritless litigation typically addressed through § 1927 sanctions. *See Fleet General,* 2024 WL 4362490, at *3 (comparing Rule 11 with § 1927); *Hernandez*, 2022 WL 2702894, at *8. Therefore, Defendants fail to make a showing that meets

the high bar of misconduct imposed by 28 U.S.C. § 1927, where "the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Intern. Bhd. of Teamsters*, 948 F.2d at 1345.

For similar reasons, it is unclear why Defendants did not seek sanctions pursuant to Fed. R. Civ. P. 11, which does permit sanctions for a single filing that objectively lacks a good faith basis. Indeed, the purpose of that rule is to "deter baseless filings in district court[.]" *Yaroshevsky v. Karlin*, 25–CV–2727, 2026 WL 522624, *7 (E.D.N.Y. Feb. 23, 2026) (*quoting Kumaran v. Northland Energy Trading, LLC*, 762 F. Supp. 3d 322, 336 (S.D.N.Y. 2025)). Had Defendants sought sanctions pursuant to Rule 11, they would have necessarily given the Plaintiff the opportunity to preview their argument and, potentially, withdraw the instant Motion to Remand. *See Yaroshevsky,* 2026 WL 522624, at *7 (describing the requirements under Rule 11 for notice and an opportunity to respond). Plaintiff's counsel may have, if faced with such notice from Defendants, addressed the contradictory assertions contained in Plaintiff's filings by withdrawing the motion or amending the Complaint. And, had Plaintiff not done so after receiving notice, the undersigned may well have recommended sanctions under Rule 11. But Defendants did not send Plaintiff such notice nor do they seek relief under Rule 11. Under those circumstances, the undersigned declines to recommend sanctions under Rule 11 *sua sponte*. Therefore, the undersigned therefore recommends that Defendants' request for a sanction of reasonable attorneys' fees and costs be denied.

## CONCLUSION

As a threshold matter, the undersigned concludes that the parties are completely diverse and that this Court has diversity jurisdiction over this matter. The undersigned thus recommends that Plaintiff's Motion to Remand be denied. The undersigned further finds that Plaintiff has plausibly alleged a "sexual harassment dispute" within the scope of the EFAA, precluding Defendants from compelling arbitration over this case. Accordingly, the undersigned recommends that Defendants' Motion to Compel Arbitration be denied on that basis. Finally, because Defendants have failed to establish bad faith by Plaintiff's counsel in filing its Motion to Remand, the undersigned recommends the Motion for Sanctions also be denied.

Any objections to this Report and Recommendation must be filed within 14 days of service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Any requests for an extension of time to file objections must be directed to Judge Gonzalez. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also Wagner & Wagner, LLP*, *v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile*, *P.C.*, 596 F.3d 84, 92 (2d Cir. 2010) ("[A] party [forfeits] appellate review of a decision in a magistrate judge's Report and Recommendation if the party fails to file timely objections designating the particular issue.").

**SO ORDERED.**

Dated: Brooklyn, New York
September 25, 2026

*/S/ SETH D. EICHENHOLTZ*
SETH D. EICHENHOLTZ
United States Magistrate Judge
Eastern District of New York